SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
FREDERICK RADCLIFF,

                Plaintiff,

-against-

TRAXNYC CORP. and MAKSUD T. AGADJANI,

                Defendants.
----------------------------------------------------------------X

Index No.:

Date Purchased:

**SUMMONS**

Plaintiff designates New York County as the place of the trial as the Defendants reside in New York County and a substantial part of the events or omissions giving rise to the claim occurred in New York County

1st Defendant's address:
64 W 47th Street
New York, NY 10036

2nd Defendant's address:
64-33 98th Apt. 6E
Rego Park, NY 11374

To the above-named Defendants:

      **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to appear in this action by serving a notice of appearance on the Plaintiff(s) at the address set forth below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the summons is not delivered personally to you within the State of New York.

      **YOU ARE HEREBY NOTIFIED THAT** should you fail to answer or appear, a judgment will be entered against you by default for the relief demanded below.

Dated: July 19, 2019
       Brooklyn, New York

                              Darius A. Marzec, Esq.
                              Marzec Law Firm, P.C.
                              Attorneys for Plaintiff
                              776A Manhattan Ave, Ste 104
                              Brooklyn, NY 11222
                              718-609-0303

Type of Action: Declaratory Relief, etc.
Relief Demand: Money Judgment and Injunctive Relief

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
FREDERICK RADCLIFF,

                Plaintiff,

- against -

TRAXNYC CORP. and MAKSUD T. AGADJANI,

                Defendants.
------------------------------------------------------------X

Index No.:

**VERIFIED COMPLAINT**

Plaintiff, FEDERICK RADCLIFF ("Plaintiff"), by and through his attorneys Marzec Law Firm, P.C., by way of Plaintiff's Verified Complaint, alleges against Defendants TRAXNYC CORP. ("TRAX") and the individually named Defendant MAKSUD T. AGADJANI ("Agadjani") (collectively, the "Defendants") (all referred to as, the "Parties") as follows:

### PARTIES

1. Plaintiff is an individual residing at 681 English Road, Rochester, New York, 14616.

2. Defendants are a corporation with a Chief Executive Officer (both of which are named as Defendants) maintaining a place of business at TRAXNYC, 64 W 47th Street, New York, New York 10036.

3. The individual Defendant Agadjani is listed as the Chief Executive Officer of TRAX with the Department of State of New York and resides at 64-33 98th Street, Apartment 6E, Rego Park, New York 11374.

1

## JURISDICTION

4. Jurisdiction is proper in the State of New York as all parties reside in the State of New York, the vast majority of acts took place in New York, and the vast majority of the transactions between the Parties occurred in New York State, New York County.

## FACTS COMMON TO ALL COUNTS

5. Years ago, Plaintiff entered into an arrangement and course of dealing with Defendants, whereby the Parties agreed that Plaintiff would be able to participate in what can only be described as a quasi-"lay away" arrangement such that Plaintiff would give Defendants for safekeeping these very valuable items that Defendants would "hold" for him in a "trade-up" (upgrade) arrangement.

6. What this means is that Plaintiff would purchase certain jewelry items for use and wear, and after a period of time, he would send certain items back to Defendants as a "down-payment" (given the items' value) so he would be able to upgrade to newer, and what he considered even more creative and valuable items, once he was able to afford to purchase the items.

7. Defendants also would routinely repair any items Plaintiff sent to them, and the Parties maintained a working relationship on these bases for years.

8. In or around October 2018, Plaintiff drove from his home in upstate New York to meet with TRAX and trade in his 36mm diamond Rolex watch, along with the two diamond and gold rings Plaintiff as a down payment towards an upgrade for a 41mm gold Rolex watch.

9. Plaintiff brought these items to TRAX to trade for the purpose of the layaway and for Plaintiff to upgrade to the more expensive jewelry as Plaintiff came into money, as Plaintiff had done over the years with TRAX.

2

10. Moreover, on February 5th, Plaintiff shipped via overnight Fed-Ex to Defendants, as he had done may times, the other two pieces of jewelry for repair; his diamond Miami Cuban Chain and Miami Cuban Bracelet to TRAX for repairs because both items needed new and longer locks.

11. These two additional pieces of jewelry are described in the same appraisal reports. Defendants received Plaintiff's package.

12. All five pieces of Plaintiff's custom, unique, and irreplaceable items of jewelry are set forth in detail above and in the Radcliff Aff., and the total amount of the appraised value of these items comes to: $124,311.

13. Most of the appraisals were issued by TRAX.

14. As set forth above, the items entrusted with Defendants for repair and on the layaway program were:

   a) 14 carat gold 22 inches diamond Cuban linked chain with a custom diamond lock;

   b) 14 carat gold 28 inches Cuban link chain;

   c) 18 carat gold Rolex Oyster Perpetual Day-Date 36mm Diamond watch with 7.5 carats of diamonds,

   d) 5.9 carat diamond "Freeze 14 carat gold 'Premier Ring',"; and

   e) 14 carat yellow 4.5 carat diamond cluster ring.

15. After dropping he items off with Defendants, and after many years of a good working relationship with Defendants, Plaintiff's items of jewelry on layaway and in for repair with Defendants are have disappeared.

16. The jewelry in question is unique and irreplaceable.

3

17. Plaintiff is left with neither the jewelry he so genuinely treasured to wear as unique creations of art, nor any of the funds Plaintiff gave to the Defendants for these items.

18. With nothing but excuses from Defendants, Plaintiff is faced with the prospect that Defendants stole, secreted, and transmuted limited possession rights in his property into ownership and have siphoned the items and funds off for Defendants' own benefit.

19. On the popular social media platform known as **Instagram**, Defendants posted a story conceding liability for the lost / unreturned jewelry.

20. The individual defendant, in that Instagram story, stated: "I will pursue **restitution** with all of my effort."

21. As such, Defendants stated to the entire world that they would pursue **restitution** on Plaintiff's behalf so that Plaintiff would be compensated in the form of either the return of his items and funds held by Defendants in accordance with the lay-away dealings or payment to Plaintiff amounting to at least the value of the jewelry Plaintiff entrusted Defendants to hold or repair.

11. The total appraised value of these items is **$124,311**.

12. Despite Plaintiff's demands for return of the items of personalty, they have not been returned, nor has Plaintiff received restitution or equivalent value.

13. These items were dear to Plaintiff's heart not because of their "value" or "prestige," (despite it being significant), but because Plaintiff has a genuine passion for the appreciation of fine jewelry and the creativity that results in what Plaintiff feel is art and these items cannot be replaced, other than for them to be returned to Plaintiff.

14. Plaintiff is what most would identify as a "heavy highway construction worker."

4

15. Plaintiff genuinely has a passion for creative, unique, and high-end jewelry such as the jewelry in question.

16. Plaintiff had to be prudent and save his money in order to continue the dealings Plaintiff had with Defendants.

17. And when Plaintiff would decide to send certain items back to Defendants for repairs or so that Plaintiff could purchase newer and more creative items, Plaintiff had to work hard to do so.

18. Plaintiff does not have this money to lose.

19. Given the unique nature of Plaintiff's relationship with Defendants over years, Plaintiff explains again just for this Court's clarity, that Defendants worked with Plaintiff in a quasi-"lay away" arrangement such that Plaintiff would give Defendants for safekeeping these very valuable items that Defendants would "hold" for Plaintiff in a "trade-up" (upgrade) arrangement.

20. Given the unique jewelry items Plaintiff entrusted with Defendants, and the unique way Defendants allowed Plaintiff to continue to purchase items from them, the relationship was to be that Plaintiff would purchase certain jewelry items for use and wear, and after a period of time, Plaintiff would send certain items back to Defendants as a "down-payment" (given the items' value) so Plaintiff would be able to upgrade to newer items, and what Plaintiff considered even more creative items, once Plaintiff was able to afford to purchase those items.

21. Plaintiff would also pay Defendants to repair certain items over the years.

22. Now, after many years of a good working relationship with Defendants, without there ever being any "dispute" even remotely close to this, Defendants now claim Plaintiff's items disappeared.

5

23. Defendants refused to return the items in question to Plaintiff.

24. These are unique pieces that Plaintiff will not be able to replace.

25. After Plaintiff demanded the return of his personalty, defendants stalled and delayed, and failed to resolve the matter.

26. Plaintiff has done <u>NOTHING WRONG</u> and complied with all of his obligations to Defendants.

## AS AND FOR THE FIRST CAUSE OF ACTION
(Replevin)

27. Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length below.

28. Defendants were entrusted with the safekeeping of Plaintiff's unique, custom, and valuable jewelry in the regular course of dealings with Defendants.

29. The above-captioned action includes a claim for replevin and is brought by Plaintiff to recover the possession of the chattels described above from Defendants, upon which Defendants promised to provide "restitution."

30. Plaintiff seeks to receive the actual items provided to Defendants, not merely restitution.

31. Defendants represented that these items would be held in the standard of course of dealing for the purposes of a "layaway" program and for repair.

32. Defendant's misrepresentations were knowing misrepresentations of material facts intended to deceive Plaintiff.

33. Plaintiff was injured by Defendants' misrepresentations.

6

34. WHEREFORE, Plaintiff demands the return of his personalty. Given the unique nature of the personalty subject to this action, Defendants' actions should be temporarily, preliminary, and permanently enjoined in addition to any money judgment being issued.

### AS AND FOR A SECOND CAUSE OF ACTION
(Conversion)

35. Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

36. Defendants intentionally exercised control over the property of Plaintiff and thereby interfered with Plaintiff's right of possession.

37. Defendants have committed a conversion and are liable for the value of the property Plaintiff entrusted with Defendants.

38. Defendants' misconduct induced a total loss of no less than $124,311 incurred by Plaintiff.

39. WHEREFORE, Plaintiff demands the return of his personalty, or a money judgment in an amount deemed proper after discovery has been completed.

### AS AND FOR THE THIRD CAUSE OF ACTION
(Breach of Contract)

40. Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

41. The Parties had performed a years' long agreement whereby Defendants allowed Plaintiff to engage in a lay-away arrangement for valuable, unique, and custom jewelry.

42. The Parties also engaged in a course of conduct where Plaintiff would send jewelry to Defendants for the purposes of repair and upgrades.

43. It was understood and agreed by Defendants that the items would be returned to Plaintiff after such repair or upgrade.

44. Likewise, when lay-away was used, the items were to be sold when Plaintiff provided additional funds to upgrade to new, more expensive jewelry.

45. Plaintiff entrusted Defendants' with his jewelry.

46. The Parties' agreement was supported by valuable consideration.

47. It was Plaintiff who would pay Defendants for the work done in repair and upgrading the jewelry.

48. The items belonging to Plaintiff, unless specifically directed to be sold, should have been returned to Plaintiff.

49. Defendants failed to perform their obligation under the Parties' agreement and course of dealing.

50. Defendants' breached the agreement and course of dealing when they failed to safeguard Plaintiff's jewelry, allowed it to be misplaced, lost or stolen, or intentionally, negligently, or recklessly caused the jewelry not to be returned to Plaintiff.

51. Defendants' breach of their obligations induced a total loss of no less than $124,311 incurred by Plaintiff.

52. Defendants intentionally breached their obligations to Plaintiff by refusing to return Plaintiff's precious jewelry or any funds to compensate Plaintiff for the loss thereof by Defendants.

53. Defendants materially, and irreparably, damaged and harmed Plaintiff by breaching the Parties' contract and course of dealing.

54. Defendant is thus liable for breach of contract.

55. WHEREFORE Plaintiff demands a money judgment in the amount deemed proper after discovery has been completed, in actual, compensatory, and expectation damages.

### AS AND FOR THE THIRD CAUSE OF ACTION
(Unjust Enrichment)

56. Defendants have refused to make Plaintiff whole.

57. Plaintiff's lay-away, repair, and upgrade arrangement with Defendants for the purchase of jewelry, which led to the likely theft of Plaintiff's jewelry enriched Defendants to their sole benefit while Plaintiff.

58. Defendants' refusal to return Plaintiff's jewelry or funds constitutes unjust enrichment at the expense of Plaintiff.

59. It is against equity and fairness for Defendants to refuse to return Plaintiff's goods or funds.

60. The circumstances are such that equity and good conscience require Defendants to make restitution to Plaintiff for the value of the jewelry entrusted to Defendants.

61. WHEREFORE, Plaintiff requests that this Court enter a judgment with respect to the relief requested above.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Trespass To Chattels)

62. Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

63. Defendants actions were intentional and unjustified.

64. Defendants physically interfered with the use and enjoyment of plaintiff's personal property.

65. As result of their actions, they caused harm to plaintiff.

9

66. WHEREFORE Plaintiff demands a judgment against Defendants in an amount no less than $124,311 together with all compensatory and expectation damages, as well as interest incurred herein by Plaintiff.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Fraud)

67. Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully

68. Defendants made material misrepresentations of fact to Plaintiff.

69. Those misrepresentations included, but were not limited to, offering to make restitution, claiming that they will take care of the problem, claiming the items were stolen by an employee, and similar. Moreover, Defendants misrepresented that Defendants could not return the items to Plaintiff because they were stolen.

70. The misrepresentations were made knowingly.

71. Plaintiff relied upon the Defendants' misrepresentations, and has been damaged to his detriment.

72. WHEREFORE, Plaintiff demands a judgment for all damages proven at trial.

Dated: July 8, 2019
Brooklyn, New York

MARZEC LAW FIRM, P.C.

By: _____
Darius A. Marzec, Esq.
Attorneys for Plaintiff
776 A Manhattan Ave, Suite 104
Brooklyn, NY 11222
(718) 609-0303

STATE OF NEW YORK        )
                         )ss.:
COUNTY OF KINGS          )

  I, Frederick Radcliff, am the Plaintiff in the within action. I have read the foregoing Complaint and know the contents thereof. The contents of the Complaint are true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

           _Frederick Radcliff_ (signature)
           Frederick Radcliff

Subscribed and sworn to before me
on July 8, 2019

_____
Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6272827 - Qualified in
New York County
Commission Expires 12/5/2020