UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FREDERICK RADCLIFF, INDIVIDUALLY AND
ON BEHALF OF OTHER CUSTOMERS OF
TRAXNYC CORP. AND MAKSUD T. AGADJANI
WHO ARE SIMILARLY SITUATED,

                       Plaintiff,

          - against -

TRAXNYC CORP. and MAKSUD T. AGADJANI,

                  Defendants.
-----------------------------------------------------------------X

Case No.: 1:19-cv-11037 (JGK) (SLC)

**SECOND VERIFIED
AMENDED COMPLAINT**

       Plaintiff, FEDERICK RADCLIFF, INDIVIDUALLY AND ON BEHALF OF OTHER

CUSTOMERS OF TRAXNYC CORP. AND MAKSUD T. AGADJANI WHO ARE

SIMILARLY SITUATED ("Plaintiff"), by and through his attorneys Marzec Law Firm, P.C., by

way of Plaintiff's Second Verified Amended Complaint, alleges against Defendants TRAXNYC

CORP. ("TRAX") and the individually named Defendant MAKSUD T. AGADJANI ("Agadjani")

(collectively, the "Defendants") (all referred to as, the "Parties") as follows:

## PARTIES

      1.    Plaintiff is an individual residing at 681 English Road, Rochester, New York,

14616.

      2.    Plaintiff brings this action based on himself and other customers of TRAXNYC

Corp. and Maksud T. Agadjani who are similarly situated.

      3.    TRAX is a corporation with a Chief Executive Officer (both of which are named as

Defendants) maintaining a place of business at TRAXNYC, 64 W 47th Street, New York, New

York 10036.

4.     The individual Defendant Agadjani is listed as the Chief Executive Officer of TRAX with the Department of State of New York and resides at 64-33 98th Street, Apartment 6E, Rego Park, New York 11374.

## JURISDICTION

5.     Jurisdiction is proper in the State of New York as all parties reside in the State of New York, the vast majority of acts took place in New York, and the vast majority of the transactions between the Parties occurred in New York State, New York County.   Upon information and belief, other putative class or collective action members are located in New York.

## FACTS COMMON TO ALL COUNTS

6.     Years ago, Plaintiff entered into an arrangement and course of dealing with TRAX, whereby the Parties agreed that Plaintiff would be able to participate in what can only be described as a "lay away" arrangement such that Plaintiff would give Defendants for safekeeping these very valuable items that Defendants would "hold" for him in a "trade-up" (upgrade) arrangement (hereinafter referred to as "Layaway Items").

7.     Plaintiff would purchase certain jewelry items for use and wear, and after a period of time, he would send certain items back to Defendants as a "down-payment" (given the items' value) so he would be able to upgrade to newer, and what he considered even more creative, unique, and valuable items, once he was able to afford to purchase the items

8.     TRAX also would routinely repair any items Plaintiff sent to it, and the Parties maintained a working relationship wherein TRAX would repair any items Plaintiff sent in for repair (hereinafter referred to as "Repair Items").

2

A.      **Layaway Items.**

9.      On or about October 2018, Plaintiff was the owner of one 36 mm diamond Rolex watch, and two diamond and gold rings.

10.     As result, Plaintiff had all possessory and ownership rights to the exclusion of all other persons.

11.     To secure his ownership rights and the value in the 36mm diamond Rolex watch and two diamond gold rings, Plaintiff had these items insured under his homeowner's insurance policy.

12.     To obtain that policy, Plaintiff received appraisals of the jewelry from TRAX, and on occasion, from other jewelers.

13.     In or around October 2018, Plaintiff drove from his home in upstate New York to meet with TRAX and trade in his 36mm diamond Rolex watch, along with the two diamond and gold rings, as a down payment towards an upgrade for a 41mm gold Rolex watch.

14.     Plaintiff received a receipt upon trading it the 36mm diamond Rolex watch and two diamond gold rings.

15.     Plaintiff expected, and the parties agreed, that in near future he would bring additional funds to upgrade to that 41mm gold Rolex watch that he wanted.

16.     Plaintiff brought these Layaway Items (36mm diamond Rolex watch and two diamond/gold rings) to TRAX to trade for the purpose of the layaway and for Plaintiff to upgrade to the more expensive jewelry as Plaintiff came into money, as Plaintiff had done over the number of years doing business with TRAX.

17.     TRAX's own policies online identify a layaway policy that calls for final payment to be made "within 2 years" and stating: "how you choose to pay for the item is at your discretion."

Attached as **Exhibit A** is a true and accurate print out from the website of Defendant TRAXNYC Corp., specifically retrieved on October 8, 2019, from https://www.traxnyc.com/policy.

18.    TRAX's layaway policy addresses various terms as well as TRAX issuing "credit" to layaway customers.

19.    TRAX violated and breached their own layaway policy by failing to issue Plaintiff a credit for the Layaway Items Plaintiff left with Defendants.

20.    Moreover, upon information and belief, while having listed for sale the items, TRAX has not yet sold them.

21.    Given that the items are likely unsold, this court should restrain defendants and enter an injunction preventing the sale of the items, as the items are unique, creative, and special, and Plaintiff will suffer irreparable harm should they be sold.

22.    While Plaintiff originally sought to, and did trade in the jewelry, given the lack of payment, the lack of exchange value, and the fact that the items are believed not to have sold, Defendants should return the items at once to Plaintiff.

23.    Should a return of the items be impossible given a prior sale, Plaintiff is entitled to receive the value of these unique, creative, and special items as to be made whole.

24.    These items are worth significantly more than basic store sold jewelry as they have been upgraded, modified, and made unique and different than standard or basic store sold jewelry.

25.    Neither should Defendants be entitled to retain interest in the items submitted as part of the layaway program without paying appropriate consideration or value to Plaintiff as Defendants would be unjustly enriched.  They should not retain a benefit in these items.

**B.**    **Repair Items.**

26.    On February 5, 2019, Plaintiff shipped via overnight Fed-Ex to Defendants, as he had done on prior occasion, two pieces of jewelry for repair: one diamond Miami Cuban Chain and one Miami Cuban Bracelet.

27.    Plaintiff sent these Repair Items (one diamond Miami Cuban Chain and one Miami Cuban Bracelet) to TRAX for repairs because both items needed new and longer locks.

28.    The items referenced to in the foregoing paragraph were owned by Plaintiff to the exclusion of all other persons.

29.    Plaintiff had a possessory interest in the items referenced herein.

30.    These items were special and unique, and modified.

31.    When Plaintiff requested a return of the items, Defendants refused.

32.    As the Defendants are believed to still retain possession of these items (upon information and belief), Defendants should be immediately restrained and enjoined from selling or transferring them, and be compelled to return the items to Plaintiff, their rightful owner.

33.    If the items had already been sold or otherwise disposed of, the court should enter a judgment for the amount sufficient to cover the value of these special, unique and creative items.

34.    These two pieces of jewelry were described in the appraisal reports issued by TRAX. Defendants received Plaintiff's FedEx package containing the Repair Items.

35.    All five pieces of Plaintiff's custom, unique, and irreplaceable items of jewelry are set forth in detail above and the total amount of the appraised value of the Layaway and Repair Items is no less than: **$124,311**.

36.    Most of the appraisals were issued by TRAX.

5

37.    As set forth above, the items entrusted with Defendants for repair and on the layaway program were:

a) 14 carat gold 22 inches diamond Cuban linked chain with a custom diamond lock;

b) 14 carat gold 28 inches Cuban link chain;

c) 18 carat gold Rolex Oyster Perpetual Day-Date 36mm Diamond watch with 7.5 carats of diamonds;

d) 5.9 carat diamond "Freeze 14 carat gold 'Premier Ring'"; and

e) 14 carats yellow 4.5 carat diamond cluster ring.

38.    After dropping the items off with TRAX, and after many years of a good working relationship with TRAX, Plaintiff's Layaway and Repair Items have all allegedly disappeared.

39.    The jewelry in question is unique and irreplaceable.

40.    Plaintiff is left with neither the jewelry he so genuinely treasured to wear as unique creations of art, nor any of the funds to seek to remake and replace these virtually irreplaceable items.

41.    With nothing but excuses from Defendants, Plaintiff is faced with the prospect that Defendants stole, secreted, and transmuted limited possession rights in his property into ownership and have siphoned the items and funds off for Defendants' own benefit.

**C.    Defendants Refuse To Return Plaintiff's Jewelry**
**Or Compensate Plaintiff For The Value of the Jewelry.**

42.    Despite Plaintiff's demands for return of the items of personalty, they have not been returned, nor has Plaintiff received restitution or equivalent value.

43.    These items were dear to Plaintiff's heart not because of their "value" or "prestige," (despite it being significant), but because Plaintiff has a genuine passion for the appreciation of

6

fine jewelry and the creativity that results in what Plaintiff feel is art and these items cannot be replaced, other than for them to be returned to Plaintiff.

44.     Plaintiff is a heavy highway construction worker.

45.     Plaintiff genuinely has a passion for creative, unique, and high-end jewelry such as the jewelry in question.

46.     Plaintiff had to be prudent and save his money in order to continue the dealings Plaintiff had with Defendants.

47.     When Plaintiff would decide to send certain items back to Defendants for repairs or so that Plaintiff could purchase newer and more creative items, Plaintiff had to work hard to do so.

48.     Plaintiff does not have this money to lose.

49.     After a number of years of a good working relationship with Defendants, without there ever being any "dispute" even remotely close to this, Defendants now claim Plaintiff's items disappeared.

50.     Defendants refuse to return the items in question to Plaintiff.

51.     These are unique pieces that Plaintiff will not be able to replace.

52.     After Plaintiff demanded the return of his personalty, Defendants stalled and delayed, and failed to return Plaintiff's jewelry or compensate Plaintiff for the value of the jewelry.

53.     Plaintiff has complied with all of his obligations to Defendants.

54.     On the popular social media platform known as **Instagram**, Defendants posted a statement conceding liability for the lost / unreturned jewelry.

55.     Defendant Agadjani later acknowledged to Plaintiff that he will make him "whole".

56.     Defendant Agadjani's statements were false when made.

57.     At the time that Defendant Agadjani made the statements, he intended to have Plaintiff rely on these statements, and the Plaintiff did in fact rely on the statements to his detriment.

58.     Based on his reliance upon the false statements, Plaintiff suffered damages. Plaintiff relied on the statements by delaying seeking an immediate court order, and by failing to immediately report the Defendants to the police.    This delay based on Agadjani's misrepresentation caused harm to Plaintiff by delaying his actions, therefore allowing Defendants to essentially convert, carry away, and perhaps even sell Plaintiff's goods.

59.     Defendant Agadjani, in that Instagram post, stated: "I will pursue **restitution** with all of my effort."

60.     Defendant Agadjani told Plaintiff in sum and substance that he will pursue restitution for him, and he acknowledged receiving all the pieces of jewelry.

61.     As such, Defendants stated to Plaintiff and the entire world that they would pursue **restitution** on Plaintiff's behalf so that Plaintiff would be compensated.

62.     Upon information and belief, Defendants were and continue to be engaged in a scheme to defraud not only Plaintiff, but others similarly situated customers, going back no less than six years prior to the filing of the initial complaint in this action.

63.     Defendants defrauded Plaintiff and other similarly situated customers as Plaintiff by failing to return merchandise sent in for repairs, failing to properly secure client merchandise when submitted per Defendants' layaway program, and failing to conduct themselves in a legal, and reasonably prudent manner.    Agadjani has used TRAX as his own personal plaything, disregarding all norms of business conduct and customer service, and has used the corporate form of TRAX for the purposes of defrauding Defendants' customers.    Defendants denied that their own

8

receipts were theirs, denied knowing the Plaintiff prior to the initiation of this suit despite indisputable evidence to the contrary, including calls and text messages, and Defendants failed to acknowledge a long-standing business relationship with Plaintiff despite evidence to the contrary.

64.     Upon information and belief, just as Defendants have treated the Plaintiff, other customers have been treated.  Not only did Defendants hatch a scheme to defraud the Plaintiff of hard-earned money as a heavy construction worker by seeking to conduct business with him, engage in a layaway program and solicit Plaintiff's goods, whether for trade-in or repair, upon information and belief, Defendants have engaged in the same treatment and a scheme to defraud with other customers of Defendants, sought to be included herein in this putative class or collective action.

65.     Upon information and belief, TRAX is wholly owned by Defendant Agadjani.

66.     Upon information and belief, in conducting the affairs of TRAX, Defendant Agadjani and failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities, used the assets of TRAX as their own, and otherwise commingled personal assets with the assets of TRAX.  Upon information and belief, this was done to circumvent a statute or statutes or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes. Upon information and belief, TRAX is the alter-ego of Defendant Agadjani; and, as will be established at trial, for the purpose of the claims made by Plaintiff and others similarly situated herein, Defendant Agadjani has no separate legal existence from Defendant Agadjani. As such, Defendant Agadjani, is liable for all claims made herein.

67.     Plaintiff brings this action on behalf of himself and all others current and former customers of Defendants who were treated similarly as Plaintiff.  As a defense to this action, Defendants alleged that a rogue employee stole jewelry belonging to customers.  While Plaintiff

believes this is a farce and a fiction (and constituting gross negligence on behalf of Defendants if this were to happen),  Defendants, upon information and belief, have been using this as an excuse to other former and current customers who did not receive their merchandise or equivalent value after submitting their items for repair or re-sale.

68.    Upon information and belief, this class of persons consists of not less than one hundred (100) persons.

69.    There are questions of law and fact common to the class, and only the value of the jewelry converted or otherwise secreted will vary.

70.    There are questions of law and fact common to the class which predominate over any questions affecting only individual members.

71.    The claims of Plaintiffs are typical of the claims of the above-described class in that the acts and practices of the Defendants have similarly affected all of the members of the class.

72.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Negligence)

73.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length below.

74.    TRAX owed a duty to all customers to duly preserve and protect their jewelry from damage or loss.

75.    TRAX failed at its duty by failing to put measures in place to secure the jewelry and protect Plaintiff's and other similarly situated customers' assets.

76.    TRAX breached that duty, causing damages to Plaintiff and the putative class, to be determined at trial.

**WHEREFORE** Plaintiff demands a judgment against Defendants together with all compensatory and expectation damages, as well as interest incurred herein by Plaintiff on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Repair Items - Replevin)

77.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length below.

78.     TRAX was entrusted with the safekeeping of Plaintiff's Repair Items, which are unique, custom, and valuable jewelry, in the regular course of dealings with TRAX.

79.     Plaintiff brings this action to recover the possession of the chattels described above from TRAX, upon which Defendants promised to provide "restitution."

80.     Plaintiff seeks to receive the actual items provided to TRAX for repair, not merely restitution.

81.     TRAX represented that these items would be held in the standard of course of dealing for the purposes of repair.

82.     TRAX converted the layaway items or is withholding the layaway items and has refused to deliver the Layaway Items to Plaintiff.

83.     Plaintiff has been injured by TRAX conversion of Plaintiff's Layaway Items or withholding thereof, and by Defendant's refusal to deliver the Layaway Items to Plaintiff.

84.     Plaintiff demands the return of the Repair Items sent to TRAX by FedEx on February 5, 2019.

85.     Upon information and belief, others similarly situated customers of TRAX too did not receive items provided to TRAX with an expectation of having them returned.

**WHEREFORE,** given the unique nature of the personalty subject to this action, TRAX's actions should be temporarily, preliminary, and permanently enjoined in addition to any money judgment being issued on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Repair Items - Conversion)

86.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

87.    TRAX intentionally exercised control over the property of Plaintiff which Plaintiff sent to TRAX by FedEx on February 5, 2019, and thereby interfered with Plaintiff's right of possession in derogation of Plaintiff's rights in his property.

88.    TRAX has committed a conversion of the Repair Items belonging to Plaintiff by Defendant's dominion over Plaintiff's property in derogation of Plaintiff's rights and Defendants are liable for the value of the property Plaintiff entrusted with Defendants.

89.    Upon information and belief, others similarly situated customers as Plaintiff had their items converted, too under similar circumstances.

**WHEREFORE,** Plaintiff demands the return of his personalty, or a money judgment in an amount deemed proper after discovery has been completed on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Repair Items - Trespass To Chattels)

90.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

91.    TRAX physically interfered with the use and enjoyment of Plaintiff's personal property, to wit: the Repair Items sent by Plaintiff to TRAX by FedEx on February 5, 2019.

92.    Defendants actions were intentional and unjustified.

93.    Upon information and belief, others similarly situated customers as Plaintiff experienced the same treatment and should receive relief as a class.

94.    As result of their actions, TRAX caused harm to Plaintiff and others similarly situated.

**WHEREFORE** Plaintiff demands a judgment against Defendants together with all compensatory and expectation damages, as well as interest incurred herein by Plaintiff on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Layaway Items - Breach of Contract)

95.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

96.    The Parties had performed an agreement whereby Defendants allowed Plaintiff to engage in a layaway arrangement for valuable, unique, and custom jewelry.

97.    It was understood and agreed by TRAX that the Layaway Items would be returned to Plaintiff after upgrade.

98.    The Layaway Items were to be sold when Plaintiff provided additional funds to upgrade to new, more expensive jewelry.

99.    Plaintiff entrusted TRAX with his jewelry, specifically the Layaway Items, pursuant to TRAX's layaway policy which is published on TRAX's website. See **Exhibit A.**

100.    The Parties' agreement was supported by valuable consideration.

101.    It was Plaintiff who would pay TRAX for the upgrading the Layaway Items.

102.    The Layaway Items belonging to Plaintiff, unless sold prior to the orders entered in

13

this case, should have been returned to Plaintiff.

103.    TRAX failed to perform their obligation under the Parties' agreement, and TRAX's own layaway policy. See **Exhibit A.**

104.    TRAX breached the agreement and its own layaway policy when they failed to safeguard Plaintiff's jewelry, allowed it to be misplaced, lost or stolen, or intentionally, negligently, or recklessly caused the jewelry not to be returned to Plaintiff.

105.    TRAX's breach of its obligations induced a significant loss and caused Plaintiff to incur significant damages.

106.    TRAX intentionally breached its obligations to Plaintiff by refusing to return Plaintiff's precious jewelry or any funds to compensate Plaintiff for the loss.

107.    TRAX materially, and irreparably, damaged and harmed Plaintiff by breaching the Parties' contract and TRAX's layaway policy.

108.    TRAX is thus liable for breach of contract.

109.    Upon information and belief, others similarly situated customers as Plaintiff had too contracts with them breached.

**WHEREFORE** Plaintiff demands a money judgment in the amount deemed proper after discovery has been completed, in actual, compensatory, and expectation damages on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

### AS AND FOR THE SIXTH CAUSE OF ACTION
#### (Unjust Enrichment)

110.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

111.    TRAX has refused to make Plaintiff whole.

14

112.    Plaintiff's layaway arrangement (pursuant to TRAX's layaway policy) with TRAX for the purchase of jewelry, which led to the theft of Plaintiff's jewelry enriched TRAX to its sole benefit.

113.    TRAX's refusal to return Plaintiff's jewelry or funds constitutes unjust enrichment at the expense of Plaintiff.

114.    It is against equity and fairness for TRAX to refuse to return Plaintiff's goods or funds, and to retain for themselves what is sought to be recovered, to wit: Plaintiff's jewelry entrusted to TRAX.

115.    The circumstances are such that equity and good conscience require TRAX to make restitution to Plaintiff for the value of the jewelry entrusted to TRAX.

116.    Upon information and belief, others similarly situated customers as Plaintiff have a cause of action against TRAX in unjust enrichment, too.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment with respect to the relief requested above on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

### AS AND FOR AN SEVENTH CAUSE OF ACTION
**(Layaway Items and Repair Items - Fraud)**

117.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

118.    TRAX made material misrepresentations of fact to Plaintiff and upon information and belief, others similarly situated.

119.    Those misrepresentations included, but were not limited to, offering to make restitution, claiming that they will take care of the problem, claiming the items were stolen by an

employee, and similar.   Moreover, TRAX misrepresented that TRAX could not return the Layaway and Repair items to Plaintiff and others similarly situated because they were stolen.

120.   The misrepresentations were made knowingly.

121.   Plaintiff, along with others similarly situated, relied upon the Defendants' misrepresentations and has been damaged to his detriment.

**WHEREFORE**, Plaintiff demands a judgment for all damages proven at trial on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

<u>**AS AND FOR THE EIGHTH CAUSE OF ACTION**</u>
**(Fraud – Defendant Agadjani)**

122.   Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

123.   Defendant Agadjani and Plaintiff communicated in person and by phone.

124.   Defendant Agadjani made material misrepresentations of fact to Plaintiff.

125.   Defendant Agadjani's material misrepresentations of fact including telling Plaintiff by posting a written statement online and by phone which telephone conversations were recorded that Defendants would make Plaintiff whole and compensate Plaintiff for the Repair Items and Layaway Items in Defendants' possession and control.

126.   Plaintiff demanded his jewelry be returned multiple times.   Plaintiff conveyed his demands directly to Defendant Agadjani which demands Agadjani acknowledged online and in multiple telephone conversations with Plaintiff.

16

127.    Defendant Agadjani misrepresented to Plaintiff that he would return Plaintiff's jewelry and/or compensate Plaintiff for the value of the jewelry which Defendant Agadjani confirmed Defendants received and of which they were in possession.

128.    Plaintiff relied on the numerous false representation of Defendant, including Defendant Agadjani's multiple misrepresentations that Defendants would return Plaintiff's jewelry in Defendants' possession.

129.    Plaintiff was fraudulently induced into believing he would be entrusting the Layaway Items with Defendants for safekeeping pursuant to Defendant TRAX's layaway policy pending an upgrade of the Layaway Items.

130.    Plaintiff was fraudulently induced into believing he would be entrusting the Repair Items with Defendants for safekeeping pursuant to Defendant TRAX's layaway policy pending defendants' repair of the Repair Items.

131.    Plaintiff believed Defendant Agadjani when Agadjani told Plaintiff in multiple telephone conversations that he would return Defendant's Layaway and Repair Items.

132.    The Defendant provided fraudulent and false information concerning the return and/or the payment of compensation if the Layaway Items and requests.

133.    Defendant was aware that the retention of Plaintiff's jewelry was retained, converted and stolen under fraudulent circumstances.

134.    Plaintiff relied upon Defendant's false and fraudulent claims and was lured into Defendant's scheme to keep and retain without compensation Plaintiff's jewelry.

135.    Defendant's misrepresentations were knowing misrepresentations of material facts intended to deceive Plaintiff into transferring funds to Defendant.

136.    Plaintiff was injured by Defendant's misrepresentations.

**WHEREFORE,** Plaintiff demands a money judgment in an amount deemed proper after discovery has been completed, but for no less than the return of Plaintiff's jewelry or compensation for the value thereof from the Defendant, on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class..

## AS AND FOR THE NINTH CAUSE OF ACTION
### (Conversion - Agadjani)

137.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

138.    Defendant Agadjani intentionally exercised control over the property of Plaintiff which Plaintiff sent to TRAX by FedEx on February 5, 2019, and thereby interfered with Plaintiff's right of possession in derogation of Plaintiff's rights in his property.

139.    Upon information and belief, Agadjani has and is running the business of TRAX as his personal plaything and using Plaintiff's jewelry for his own purposes and engaging in the theft of Plaintiff's jewelry for the purposes of conducting and engaging in fraud.

140.    Defendant Agadjani has committed a conversion of the jewelry belonging to Plaintiff by his dominion over Plaintiff's property in derogation of Plaintiff's rights and Defendant Agadjani is liable for the value of the property Plaintiff entrusted with TRAX and which Agadjani converted to his own use for the benefit of himself and his company.

**WHEREFORE,** Plaintiff demands the return of his personalty, or a money judgment in an amount deemed proper after discovery has been completed on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

## AS AND FOR THE TENTH CAUSE OF ACTION
### (Fraudulent Inducement - Agadjani)

141.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs herein, with the same force and effect as though more fully set forth at length herein.

142.    Defendant Agadjani engaged in knowing misrepresentation of material present fact, which was intended to deceive Plaintiff and induced Plaintiff to act on it, resulting in injury, to wit: the loss of Plaintiff's jewelry.

143.    Agadjani's misrepresentation of present facts, unlike a misrepresentation of future intent to perform under TRAX's layaway policy, as well as the TRAX's contract with Plaintiff to retain, repair and return Plaintiff's Repair Items, are all collateral to the contract, even though it may have induced Plaintiff to enter into it, and therefore involves a separate breach of duty.

**WHEREFORE,** Plaintiff seeks rescission of the contracts entered into with TRAX as he was fraudulently induced to enter into a contract, along with damages to be determined at trial on behalf of himself and others similarly situated as well as attorneys' fees and costs on behalf of himself and the putative class.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: December 18, 2019
     Brooklyn, New York

              **MARZEC LAW FIRM, P.C.**

By: _____
      Jerome Noll, Esq.
      Attorneys for Plaintiff
      776 A Manhattan Ave, Suite 104
      Brooklyn, New York 11222
      (718) 609-0303
      (718) 841-7508 Fax
      jerome.noll@marzec.myfirm.pro

## <u>VERIFICATION</u>

I, Jerome Noll, an attorney admitted to the practice of law before the courts of the State of New York and not a party to this action, affirm the following to be true under the penalties of perjury, on information and belief:  I am the attorney for Plaintiff Frederick Radcliff ("Plaintiff"). I have read the foregoing Second Amended Complaint and know the contents thereof; that the same are true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters I believe them to be true.  This Verification is made by me instead of Plaintiff because Plaintiff is not within the county where I maintain my office.

_____
Jerome Noll, Esq.